IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| FORAGE GENETICS INTERNATIONAL, LLC, | § § § | |
| Plaintiff, | § § | |
| v. | § § | 2:17-CV-243-D-BR |
| KELLY GREEN MEXICANA, INC., | § § § | |
| Defendant. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION TO GRANT IN PART AND DENY IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Before the Court is Plaintiff Forage Genetics International, LLC's ("Forage") Motion for Summary Judgment. (ECF 32). Forage seeks summary judgment on: (1) its own claims against Defendant Kelly Green Mexicana, Inc. ("KGM"); and (2) KGM's counterclaims against it. The Court will address the facts relevant to Forage's claim and KGM's counterclaims in the claims' respective sections. The undersigned United States Magistrate Judge recommends the Motion be GRANTED in part and DENIED in part.

    **I.**    **SUMMARY JUDGMENT STANDARD & APPLICABLE BURDENS**

Summary judgment is appropriate when the pleadings, affidavits, and other summary judgment evidence show that no genuine issue of material fact exists, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A fact is material if it might affect the outcome of the lawsuit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). A dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.* at 248. To determine whether there are any genuine issues of material fact, the Court must first ascertain the factual

issues that are material under the applicable substantive law. *See id.*; *Lavespere v. Niagra Mach. & Tool Works*, 910 F.2d 167, 178 (5th Cir. 1990), *abrogated on other grounds by Little v. Liquid Air Corp.*, 37 F.3d 1069, 1076, n.14 (5th Cir. 1994). Next, the Court must review the evidence on those issues, viewing the facts in the light most favorable to the nonmoving party. *Lavespere*, 910 F.2d at 178; *Newell v. Oxford Mgmt. Inc.*, 912 F.2d 793, 795 (5th Cir. 1990) (citing *Reid v. State Farm Mut. Auto. Ins. Co.*, 784 F.2d 577, 578 (5th Cir. 1986) (internal quotation omitted)); *Medlin v. Palmer*, 874 F.2d 1085, 1089 (5th Cir. 1989). "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3). However, Rule 56 "does not impose on the district court a duty to sift through the record in search of evidence to support" a party's motion for, or opposition to, summary judgment. *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915–16, n.7 (5th Cir. 1992). The Court should not weigh the evidence and determine the truth of the matter in determining whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249.

If the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, no genuine dispute for trial exists. *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). Conclusory allegations, unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence and are insufficient to defeat a motion for summary judgment. *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996); *Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994) (internal citation omitted).

### A. Forage's summary judgment burden on its own claims

Forage seeks summary judgment on its claims against KGM under sections 2.607 and 2.709 of the Uniform Commercial Code ("UCC") for recovery of the purchase price of a second

load of seed that Forage sold (and delivered) to KGM (Count I in Forage's Complaint) and also on Forage's claim for prejudgment interest under section 302.002 of the Texas Finance Code at the rate of $12.61 per day from March 1, 2019, through the date of entry of judgment. (ECF 32). Forage bears the burden of proof on these claims at trial. If "the movant bears the burden of proof on an issue, either because he is the plaintiff or as a defendant he is asserting an affirmative defense, he must establish beyond peradventure all of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot*, 780 F.2d at 1194. The "beyond peradventure" standard imposes a "heavy" burden. C*ont'l Cas. Co. v. St. Paul Fire & Marine Ins. Co.*, No. 3:04-cv-1866-D, 2007 WL 2403656, at *10 (N.D. Tex. Aug. 23, 2007).

### B. Forage's summary judgment burden on KGM's counterclaims

Forage also seeks summary judgment on KGM's counterclaims for "breach of the UCC," breach of contract, and tortious interference with continuing and prospective business relations. (ECF 32). Forage does not have the burden of proof at trial on these claims. If "the burden of proof at trial lies with the nonmoving party, the movant may satisfy its initial burden by showing—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Duffie v. United States*, 600 F.3d 362, 371 (5th Cir. 2010) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986) (internal quotation omitted)). The movant then "must demonstrate the absence of a genuine issue of material fact," but does not have "to negate the elements of the nonmovant's case." *Id*. (citing *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005)).

"If the moving party fails to meet its initial burden, the motion for summary judgment must be denied, regardless of the nonmovant's response." *Quorum Health Res., L.L.C. v. Maverick Cty. Hosp. Dist.*, 308 F.3d 451, 471 (5th Cir. 2002) (citing *Little*, 37 F.3d at 1075).

On the other hand, if the movant meets its burden to show an absence of evidence supporting the nonmovant's case, then the nonmovant must go beyond his pleadings and designate specific facts showing there is a genuine issue for trial. *Little*, 37 F. 3d at 1075 (citing *Celotex*, 477 U.S. at 324). If the non-movant cannot provide some evidence to support its claim, then summary judgment is appropriate. Fed. R. Civ. P. 56(e); *Stahl v. Novartis Pharms. Corp.*, 283 F.3d 254, 263 (5th Cir. 2002).

## II.     FORAGE'S CLAIMS UNDER SECTIONS 2.607 & 2.709 OF THE UCC

Forage produces and sells seed products, including alfalfa seed. (Forage App., 1).[1] KGM distributes seed products. (*Id*. at 1, 57). KGM's practice was to purchase alfalfa seed from Forage, then sell the seed to Warner International Seeds ("WINS"). (*Id*. at 1, 57, 105–06; KGM App., 1). WINS then resold the alfalfa seed to seed dealers in Mexico. (Forage App., 1, 57–58, 105–06).

Forage delivered seed to KGM, which KGM accepted, on November 25, 2015 (the "seed"). (*Id*. at, 9, 36, 80-81, 89, 126, 142). The invoice for the seed became due on April 25, 2016, and the unpaid balance of the invoice is $76,685. (*Id.* at 38, 41, 48). Forage seeks summary judgment on its claims against KGM under sections 2.607 and 2.709 of the UCC for recovery of the unpaid amount of the seed's purchase price. (Count I in Forage's Complaint).[2] (ECF 32). Forage must establish all essential elements of its claim to warrant summary judgment in its favor.

Texas has adopted the UCC in its Business and Commercial Code. *See* Tex. Bus. & Com. Code § 2.102 *et seq*. The UCC "applies to transactions in goods." Tex. Bus. & Com. Code § 2.102;

---

[1] ECF 34 is Forage's appendix in support of its motion for summary judgment and will be cited as "Forage App." Citations will refer to the numbering assigned by Forage. ECF 39 is KGM's appendix in support of its response to the motion for summary judgment and will be cited as "KGM App." Citations will refer to the numbering assigned by KGM.

[2] In Forage's Answer to Defendant's Counterclaims and Affirmative Defenses, it asserted that Minnesota law governs this case pursuant to the parties' credit agreement's choice-of-law provision. Forage's Motion for Summary Judgment and brief exclusively rely on Texas law and do not address this issue. The Court will analyze the claims and counterclaims at issue under Texas law.

*see J.D. Fields & Co. v. U.S. Steel Int'l, Inc.*, 426 F. App'x 271, 276 (5th Cir. 2011). Alfalfa seed constitutes a "good" because it is a thing that is movable at the time of identification to the contract for sale. *See* Tex. Bus. & Com. Code § 2.105(a). The parties agree the UCC applies. "When the UCC applies, it displaces all common law rules of law regarding breach of contract and substitutes instead those rules of law and procedures set forth in the UCC." *J.D. Fields*, 426 F. App'x at 276 (internal citation omitted). "However, common law principles of law and equity continue to supplement its provisions." *Id.* (citing *Crest Ridge Constr. Group, Inc. v. Newcourt Inc.*, 78 F.3d 146, 152 (5th Cir. 1996)).

Section 2.607 of the UCC states that a buyer must pay at the contracted rate for any goods accepted. Tex. Bus. & Com. Code § 2.607. Acceptance of goods received under section 2.606(a) occurs when the buyer:

> (1) after a reasonable opportunity to inspect the goods signifies to the seller that the goods are conforming or that he will take or retain them in spite of their non-conformity; or
>
> (2) fails to make an effective rejection (Subsection (a) of Section 2.602), but such acceptance does not occur until the buyer has had a reasonable opportunity to inspect them; or
>
> (3) does any act inconsistent with the seller's ownership….

*Id.* § 2.606.  Section 2.709(a)(1), "Action for the Price," states in relevant part:

> (a) When the buyer fails to pay the price as it becomes due the seller may recover, together with any incidental damages under the next section, the price
>
> > (1) of goods accepted ... within a commercially reasonable time after the risk of their loss has passed to the buyer….

*Id.* § 2.709(a)(1).

It is undisputed that KGM accepted the seed (ECF 33 at 20; 38 at 15–16), and the record supports this. (Forage App., 9, 36, 80–81, 89, 126, 142). It is also undisputed that the invoice for the seed became due on April 25, 2016 and the unpaid balance of the invoice is $76,685. (*Id.* at

5

38, 41, 48). There is no genuine issue of material fact with respect to KGM's acceptance of the seed and the outstanding balance of the invoice. Forage is entitled to summary judgment on its claims under the UCC.

### III.   FORAGE'S CLAIM FOR PREJUDGMENT INTEREST

Forage also seeks summary judgment on its claim for prejudgment interest under section 302.002 of the Texas Finance Code. (ECF 32; 40 at 5–6). In diversity cases, post-judgment interest is calculated at the federal rate, while pre-judgment interest is calculated under state law. *See Boston Old Colony Ins. Co. v. Tiner Assocs., Inc.*, 288 F.3d 222, 234 (5th Cir. 2002) (citing 28 U.S.C. § 1961(a)). Section 302.002 applies only to creditors. *See Bufkin v. Bufkin*, 259 S.W.3d 343, 357 (Tex. App.—Dallas 2008, pet. denied) (section 302.002 "does not apply to contracts where there is no extension of credit"); *see also de la Garza v. de la Garza*, 185 S.W.3d 924, 928 (Tex. App.—Dallas 2006, no pet.) (section 302.002 does not allow a non-creditor to recover prejudgment interest). The Texas Finance Code defines "creditor" as "a person who loans money or otherwise extends credit." Tex. Fin. Code. § 301.002(a)(3).

While Forage presented some evidence that the parties entered into a credit agreement (Forage App., 37–47), KGM provided some evidence that the credit agreement is unenforceable because it was signed by a KGM employee who lacked authority to bind KGM. (Forage App., 60–61). Forage's response to KGM's argument further complicates the issue because Forage seems to argue it is not seeking to enforce the credit agreement. (ECF 40 at 5–6). Without establishing that it loaned money or extended credit to KGM, Forage cannot show section 302.002 applies. *See Clayton v. Asset Plus Companies, LP*, No. 4:13-CV-2862, 2014 WL 6388430, at *3 (S.D. Tex. Nov. 14, 2014). Forage has not met its burden to show no genuine issue of material fact exists with respect to its claim for prejudgment interest under section 302.002 of the Texas Finance Code.

Thus, Forage is not entitled to summary judgment on its claim for prejudgment interest under the Finance Code.

## IV.     KGM'S COUNTERCLAIMS

Forage also seeks summary judgment on KGM's counterclaims for "breach of the UCC," breach of contract, and tortious interference with continuing and prospective business relations. (ECF 32). KGM claims the parties formed a contract for the sale of the seed on July 22, 2015 for delivery between August 15th and September 15, 2015, but the seed was delivered late on November 25, 2015. (ECF 38 at 6, 15–16). Additionally, KGM claims that Forage sold seed to customers in Mexico during 2015 and/or 2016 at prices lower than the prices paid by KGM for the seed delivered on November 25, 2015. (ECF 8 at 5–7). Because of the late delivery and "price undercutting," KGM claims it lost sales from 2016–2019. (Forage App., 114; KGM App., 2, 4–5).

As the movant seeking summary judgment on KGM's counterclaims, Forage may satisfy its initial burden by showing that there is an absence of evidence to support KGM's case. *See Duffie*, 600 F.3d at 371. If Forage meets its burden, then KGM must provide some evidence to support each of its claims and show a genuine issue of material fact exists with respect to its claims. *See Little*, 37 F.3d at 1075.

### A. Breach of warranty under section 2.714

Based on KGM's pleadings and response, the Court understands KGM's counterclaim for "breach of the UCC" to be a claim for breach of warranty under section 2.714. (*See* ECF 8 at 5–6; 38 at 15–16).

When a buyer has accepted nonconforming goods, its only remedy is an action against the seller under section 2.714. *SB Int'l, Inc. v. Mike Jordan Co., Inc.*, No. 3:08-CV-1091-P, 2009 WL 10704364, at *2 (N.D. Tex. June 3, 2009); *Beauty Mfg. Sols. Corp. v. Ashland, Inc.*, 848 F. Supp.

7

2d 663, 668–71 (N.D. Tex. 2012). Section 2.714 allows a buyer to recover for a seller's breach of warranty. *See Beauty Mfg. Sols.*, 848 F. Supp. 2d at 668–71. To state a claim for breach of warranty, a buyer must establish:

(1) an affirmation or promise made by the seller to the buyer;

(2) that such affirmation or promise was part of the basis for the bargain, e.g., that the buyer relied on such affirmation or promise in making the purchase;

(3) that the goods failed to comply with the affirmation or promise;

(4) that there was financial injury; and

(5) that the failure to comply was the proximate cause of the financial injury to the buyer.

*Id*. at 671.

To recover under 2.714(a) the buyer must comply with section 2.607(c), which states in relevant part that "[w]here a tender has been accepted, the buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy." Tex. Bus. & Com. Code § 2.607(c). Timely notification of a breach is "within a reasonable time after he discovers or should have discovered any breach." *Id*. § 2.607(c)(1). If a buyer fails to do so, he will "be barred from any remedy." *Id*.

When a buyer has accepted and exercised ownership over goods, it is "not entitled to an extinction of the price," but may be "entitled to damages for the nonconformity of the goods [under section 2.714] if it gave notice to [the seller] of the nonconformity" as required by section 2.607(c). *Micromedia v. Automated Broad. Controls*, 799 F.2d 230, 236 (5th Cir. 1986); *Beauty Mfg. Sols.*, 848 F. Supp. 2d at 668–71. The measure of damages for breach of warranty is: (1) the difference of value at the time and place of acceptance between the value of the goods as accepted and the value as warranted; (2) consequential damages, including lost profits; and (3) incidental damages,

such as warehouse storage and fees. *See HCI Chemicals (USA), Inc. v. Henkel KGaA*, 966 F.2d 1018, 1024 (5th Cir. 1992); Tex. Bus. & Com. Code § 2.714(c)(1).

In determining the value of the goods as warranted under section 2.714(b), "the fair market value of conforming goods at the time of acceptance is the most appropriate measure of the warranted value." *HCI Chemicals*, 966 F.2d at 1024 (internal citation omitted). "When fair market value cannot be easily determined, or the parties do not raise it as a measure of value, the purchase price may turn out to be strong evidence of the value of the goods as warranted." *Id*. "Proof of the contract purchase price, standing alone, is sufficient to support a finding that that amount was the fair market value as warranted by the seller." *Sweco, Inc. v. Cont'l Sulfur & Chem.*, 808 S.W.2d 112, 118 (Tex. App.—El Paso 1991, writ denied) (internal citation omitted); *see also Lone Star Ford, Inc. v. McGlashan*, 681 S.W.2d 720, 725 (Tex. App.—Houston [1st Dist.] 1984, no writ) (internal citations omitted).

Forage has met its initial burden to show an absence of evidence with respect to the fourth and fifth elements of KGM's breach of warranty claim. It is undisputed that KGM purchased the seed from Forage for $136,685.00 and resold it to WINS on November 25, 2015, the same day that KGM received the seed from Forage, for $137,685.21. (Forage App., 9, 48, 142). KGM has provided no evidence to counter Forage's calculation of the value of the seed as warranted and the seed's value at the time and place of acceptance. KGM offered some evidence that it lost profits from 2016 to 2019 (KGM App., 4–5), but cited no evidence that the alleged breach of warranty proximately caused the lost sales.

Further "(at) a minimum, opinions or estimates of lost profits must be based on objective facts, figures, or data from which the amount of lost profits can be ascertained." *Hiller v. Mfrs. Prod. Research Grp. of N. Am., Inc.*, 59 F.3d 1514, 1524 (5th Cir. 1995) (internal quotation and

citation omitted). KGM's calculation of lost profits states only projected future gross sales and gross profits. (KGM App., 4–5). "[W]hen lost profits are dependent on a plaintiff's lost contracts with customers, Texas law requires that such contracts be proved with reasonable certainty, both as to their existence and their number." *Great Pines Water Co. v. Liqui-Box Corp.*, 203 F.3d 920, 922–23 (5th Cir. 2000) (citing *Holt Atherton Indus., Inc. v. Heine*, 835 S.W.2d 80, 85 (Tex. 1992)). Forage presented evidence that KGM sent an e-mail message to Forage in September 2016 stating that KGM had lined up sales for 3,500 to 4,000 bags of seed, almost twice the amount of alfalfa seed it purchased during 2015. (Forage App., 52). KGM presented no evidence with respect to the existence and number of lost contracts with customers. Forage is entitled to summary judgment on KGM's claim of breach of warranty.

### B. Breach of contract

This District has held that a buyer may bring a breach of contract claim under section 2.714 with respect to accepted goods. *See Beauty Mfg. Sols.*, 848 F. Supp. 2d at 668–71. To state a claim for breach of contract, a party must establish: "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach." *Id*. at 667 (citing *Mullins v. TestAmerica, Inc.*, 564 F.3d 386, 418 (5th Cir. 2009)). "A proper measure of damages in a breach of contract case is the loss of contractual profit." *Amigo Broad., LP v. Spanish Broad. Sys., Inc.*, 521 F.3d 472, 482–83 (5th Cir. 2008) (citing *Interceramic, Inc. v. S. Orient R.R. Co.*, 999 S.W.2d 920, 928 (Tex. App.—Texarkana 1999, pet. denied)). Even viewing the facts in the light most favorable to KGM, KGM has presented no evidence it sustained damages as the result of any breach for the reasons discussed above. Forage is entitled to summary judgment on KGM's breach of contract claim.[3]

---

[3] KGM's briefing emphasizes that it believes it gave notice of nonconformance to Forage. (*See* ECF 38 at 11). However, notice of nonconformance is just one of the prerequisites for recovering under section 2.714. Forage's

### C. Tortious interference with continuing and prospective business relations

"Under Texas law, the elements of a claim for tortious interference with a prospective business relationship are: '(1) a reasonable probability that the plaintiff would have entered into a business relationship, (2) an independently tortious or unlawful act by the defendant that prevented the relationship from occurring, (3) the defendant did such act with a conscious desire to prevent the relationship from occurring or the defendant knew the interference was certain or substantially certain to occur as a result of the conduct, and (4) the plaintiff suffered actual harm or damages as a result of the defendant's interference.' " *Mary Kay, Inc. v. Weber*, 601 F. Supp. 2d 839, 863 (N.D. Tex. 2009) (citing *Baty v. ProTech Ins. Agency*, 63 S.W.3d 841, 860 (Tex. App.—Houston [14th Dist.] 2001, pet. denied)). "To show a 'reasonable probability,' a plaintiff must show that, absent the defendant's misconduct, the plaintiff would have won the contract." *Vendever LLC v. Intermatic Mfg. Ltd.*, No. 3:11-CV-201-B, 2011 WL 4346324, at *6 (N.D. Tex. Sept. 16, 2011) (citing *Verkin v. Melroy*, 699 F.2d 729, 732 (5th Cir. 1983)). Additionally, a plaintiff must show the conduct complained of was independently tortious, not just that the conduct cost plaintiff the business relationship. *See Wal–Mart Stores, Inc. v. Sturges*, 52 S.W.3d 711, 727 (Tex. 2001) ("[W]hen two parties are competing for interests to which neither is entitled…harm that results only from lawful competition [or conduct] is not compensable by the interference tort.").

Forage met its initial burden to show an absence of evidence with respect to the second and third elements. With regard to the third element, Forage presented evidence, and KGM concedes, that Forage's sister company, Winfield Solutions, LLC ("Winfield"), not Forage, competed with KGM in Mexico. (Forage App., 95–97, 110, 139, 140, 147). Forage presented evidence that Forage and Winfield are owned by Land O'Lakes, but are entirely separate and independent companies,

---

motion states KGM cannot show damages (ECF 33 at 26), and KGM failed to meet its burden to raise a fact issue with respect to damages.

and have their own products, management, sales representatives, customers, offices, and facilities. (Forage App., 10, 145). Forage presented evidence that it was not involved in Winfield's marketing or pricing strategies for sales to customers in Mexico during 2015 or 2016 and did not learn there was an issue regarding Winfield's marketing and pricing strategies for customers in Mexico until 2016, after the events at issue. (*Id.* at 10–11, 145).

KGM argues Winfield sold seed directly to customers in Mexico at prices lower than the price KGM paid for the seed at issue. (ECF 8 at 5–7). KGM claims Winfield and Forage "cannot be differentiated for the purpose of the tort claims in this case." (ECF 38 at 16–17). In support, KGM offers only invoices it received for the purchase price of the seed that bear Winfield's name. (KGM App., 39-3 at 13–136).

Regardless, with respect to the second element, Forage met its initial burden to show an absence of evidence. Forage presented deposition testimony of Jerry Monk, KGM's president, showing an absence of evidence that Winfield was selling seed products in Mexico below cost or in a manner that was independently tortious or unlawful. (Forage App., 100). Forage also presented testimony from Monk's deposition in which Monk agrees price competition is normal in the seed business. (*Id.*). KGM provided no evidence showing that Forage or Winfield committed an independently tortious or unlawful act.

The only evidence KGM offered to show Forage or Winfield engaged in price cutting is Monk's deposition testimony that Forage "undercut us 10% on [our] prices" and Forage's internal notes that Winfield was "undercutting prices." (Forage App., 50, 93). Viewing the facts in the light most favorable to KGM, KGM has shown only that Winfield may have sold seed directly to customers at a price lower than Forage previously charged KGM. Price cutting is not automatically

unlawful, and KGM made no argument and cited no evidence to show this conduct is independently tortious or unlawful.

Additionally, with respect to the first element of its counterclaim, KGM failed to present evidence showing a reasonable probability that KGM lost prospective business with customers because of independently tortious acts by Forage. As noted above, Forage presented evidence that KGM sent an e-mail message to Forage in September 2016 stating that KGM had lined up sales for 3,500 to 4,000 bags of seed. (Forage App., 52). Nevertheless, KGM does not identify specific customers or anticipated and prospective business it lost because of the conduct it alleges. Forage is entitled to summary judgment on KGM's claim of tortious interference with continuing and prospective business relations.

## V. RECOMMENDATION

It is the RECOMMENDATION of the United States Magistrate Judge to the United States Senior District Judge that Forage's Motion for Summary Judgment (ECF 32) be GRANTED in part and DENIED in part. Specifically, the undersigned recommends Forage's motion for summary judgment on prejudgment interest be DENIED, but GRANTED as to all other grounds.

## VI. INSTRUCTIONS FOR SERVICE

The United States District Clerk is directed to send a copy of this Findings, Conclusions, and Recommendation to each party by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED June 17, 2019.

_____
LEE ANN RENO
UNITED STATES MAGISTRATE JUDGE

13

## \* NOTICE OF RIGHT TO OBJECT \*

Any party may object to these proposed findings, conclusions, and recommendation. In the event parties wish to object, they are hereby NOTIFIED that the deadline for filing objections is fourteen (14) days from the date of filing as indicated by the "entered" date directly above the signature line. Service is complete upon mailing, Fed. R. Civ. P. 5(b)(2)(C), or transmission by electronic means, Fed. R. Civ. P. 5(b)(2)(E). Any objections must be filed on or before the fourteenth (14th) day after this recommendation is filed as indicated by the "entered" date. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(d).

Any such objections shall be made in a written pleading entitled "Objections to the Findings, Conclusions, and Recommendation." Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties. A party's failure to timely file written objections shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge and accepted by the district court. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1), as recognized in *ACS Recovery Servs., Inc. v. Griffin*, 676 F.3d 512, n.5 (5th Cir. 2012); *Rodriguez v. Bowen*, 857 F.2d 275, 276–77 (5th Cir. 1988).